OPINION *Page 2 
{¶ 1} Appellant Loren L. Nethers appeals his conviction and sentence entered on April 3, 2007, in the Licking County Court of Common Pleas on eight counts of gross sexual imposition.
 {¶ 2} Appellee is State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} For approximately a ten year period commencing in 1997, Appellant allegedly sexually abused his three daughters: Erica Wood, Erin Wood, and Crystal Nethers.
 {¶ 4} These allegations were initially brought by Michael Day an ex-boyfriend of Erin Wood. Mr. Day alleged that he had a conversation with Erin Wood where she said she was sexually abused by her father. Immediately after such conversation, Mr. Day revealed the information to Adrian Wood, Erin's mother. When Ms. Wood failed to take any action, Mr. Day reported the allegations to the Licking County Sheriff. As a result of the allegations, the Sheriff and Children's Services began an investigation, and removed the minor children from the home.
 {¶ 5} At trial Mr. Day testified that he in fact had made the initial complaint to the Licking County Sheriff. Detective Chris Barbuto of the Licking County Sheriffs Office testified that he contacted Adrian Wood and requested that she bring Erin to his office for an interview. Ms. Wood complied and brought both Erin and Erica Wood with her to the interview. Afterwards, Adrian, Erica, Erin and Crystal were taken by Jennifer Burke, a social worker for Licking County Children Services, to the Licking County Job And *Page 3 
Family Services building. The minor children were then immediately placed in foster care. Adrian and Erica returned home.
 {¶ 6} Subsequently, Mr. Nethers was interviewed by Detective Barbuto, at which time he denied the allegations of sexual abuse.
 {¶ 7} Appellant was indicted on three counts of sexual battery in violation of R.C. § 2907.03(A)(5), three counts of rape in violation of R.C. § 2907.02(A)(1)(b), and eight counts of gross sexual imposition in violation of R.C. § 2907.05(A)(4).
 {¶ 8} On January 16, 2007, pursuant to R.C. § 2907.02(E), a rape shield hearing was held. At that time neither the prosecution nor Appellant indicated a desire to have a rape shield hearing. (R.S. Hearing T. at 3).
 {¶ 9} On January 22, 2007, a change of plea hearing was held. At that time Appellant withdrew his previously entered not guilty pleas and entered into a negotiated plea agreement. As part of the plea, Appellant pled guilty to eight (8) counts of gross sexual imposition, felonies of the 3rd degree. The State requested to nolle prosequi Counts 1 through 7, and recommended concurrent sentences on the eight (8) counts. The State further recommended that less than the maximum prison sentence be imposed. Finally, the State agreed not to pursue any type of charges against the mother, Adrian Wood, for either permitting or failing to report the underlying allegations and fact patterns of the case. (Change of Plea Hrng. at 3-4).
 {¶ 10} Pursuant to Crim. R. 11, the trial court entered into a colloquy with Appellant to ascertain whether the change of plea was freely, knowingly, and voluntarily made. While under oath, after recitation of the facts by the State, Appellant agreed with the *Page 4 
facts, admitted his guilt, and acknowledged that his change of plea was freely, knowingly, and voluntarily made.
 {¶ 11} On February 23, 2007, Appellant filed a motion to withdraw his guilty plea.
 {¶ 12} On February 27, 2007, a hearing on Appellant's motion to withdraw his guilty plea was held. At said hearing, Appellant's counsel advised the trial court that Appellant "has no ability to read and write" (Motion hrng. T. at 4), that he was mentally retarded, and that Appellant went along with the change of plea "because he was simply scared." (Motion hrng. T at 4). Appellant testified at the hearing that: he could not read or write, and receives social security as he is classified mentally retarded. Appellant's sister also testified to verify Appellant's claim (Motion Hrng. T at 17). Notwithstanding the State's protestation to the contrary, the trial court allowed Appellant to withdraw his plea. In doing so, however, all previously dismissed charges were revived. (Motion Hrng. T at 27).
 {¶ 13} On May 1, 2007, this matter came for trial.
 {¶ 14} At trial, Erica Wood testified that her father began having sexual intercourse with her when she was in middle school. She then went on to deny that she had in fact had sexual intercourse with her father, and that her statements to authorities were in fact lies.
 {¶ 15} Crystal Nethers testified at trial that her father had touched her in places where she did not want to be touched (T. at 111-112).
 {¶ 16} After Crystal's testimony, a break was taken, and it was discovered that one of the jurors, Mr. Lucas, recognized Adrian Wood, a potential witness. Upon voir dire Mr. Lucas disclosed that he drove a school bus, and had previously seen Adrian *Page 5 
and Erin Wood getting on and off of other buses. He also held a door open for them and asked them "how they had been doing". (T. at 119). Mr. Lucas also testified that any knowledge he had would not affect his ability to be a fair and impartial juror in the case. (T. at 116). Mr. Lucas was allowed to continue in the trial proceeding without objection from counsel.
 {¶ 17} Upon continuing her testimony, Crystal stated that the sexual abuse by her father began around Thanksgiving, 2005 and continued until she was taken from the home.
 {¶ 18} The defense then called Erin Wood, who recanted the story she told to Detective Barbuto and denied any sexual molestation by her father.
 {¶ 19} Mr. James Noblick testified that he had never seen any molestation of Crystal by Appellant and that Crystal's reputation for honesty was that "she — is not very honest." (T. at 163).
 {¶ 20} Tammy Sparks testified that her daughter Tabitha Sparks was Crystal's friend since the second grade, and that Crystal's reputation for being truthful or untruthful was "I know that she's been known as a troublemaker, but being truthful and untruthful, I'm not too sure. I haven't heard much about that." (T. at 166).
 {¶ 21} Adrian Wood was called by the defense, but delayed her testimony until she was able to obtain and consult with an attorney.
 {¶ 22} Appellant testified in his own behalf. He testified that Crystal failed to testify truthfully, and denied sexually abusing Erica. He also denied sexual contact with Erica. *Page 6 
 {¶ 23} Upon cross-examination, Appellant stated that the allegations were "all because of the fact that you're trying to bring Erin and Michael up?"
 {¶ 24} At trial, a tape was played in which Appellant had a conversation with Erica and Adrian Wood regarding testimony at trial. Appellant admitted that the voices on the tape were his and Erica's. Appellant denied attempting to influence her testimony, and stated that he was merely attempting to explain what was going on. He also claimed that his conversations with Adrian were merely an attempt to further that goal. Appellant unsuccessfully objected to the use of the tape (T. at 190), as the trial court noted the tape was being utilized for "rebuttal, and that Appellant could have indicated to counsel that he had made phone calls while in the county jail." (T. at 190).
 {¶ 25} A short recess was granted at the conclusion of cross-examination, and prior to concluding the trial, defense counsel was allowed to listen to the tapes in their entirety. (T. at 190).
 {¶ 26} Adrian Wood retook the stand and testified that she wanted Erica to testify to the truth. Ms. Wood testified that she told Crystal "to go in and tell him [Barbuto] that he [Appellant] had touched her" because she was mad and wanted to cause trouble in order to resolve a child support issue. (T. at 202).
 {¶ 27} Without the benefit of having heard the taped jailhouse telephone calls, Ms. Wood testified that she did not try to pressure her daughters with regard to their testimony and denied trying to coach or influence Erica as to what she was supposed to say. (T. at 211).
 {¶ 28} Appellant's nephew and niece testified in his behalf. Rodney Nethers testified that Crystal was his cousin, and that her reputation for being a truthful or *Page 7 
untruthful person was that "she's a untruthful person." (T. at 213). Mr. Chad Dondrea also testified that Crystal had a reputation as "a very untruthful person." (T. at 215). Amanda Dondrea likewise testified that Crystal was "most of the time untruthful." (T. at 217).
 {¶ 29} Finally, Tamara Jo Mason was called to rebut the testimony of Adrian Wood. Ms. Mason testified that while crying, Adrian told her that she was in a position where she had to make a choice between her daughters and Loren, and she said I choose Loren. (T. at 222).
 {¶ 30} At the close of the State's case, the prosecutor moved the trial court to dismiss counts 1, 2, 3, and 7. Having no objection, the trial court granted the motion to dismiss said counts. At the close of the defendant's case, counsel for the defendant made a Crim. R. 29 Motion For Acquittal of counts 4, 5 and 6, and 8 through 15. The court granted the motion for acquittal as to count 4. The court denied the motion for acquittal as to counts 5, 6, and 8 through 15.
 {¶ 31} On May 31, 2007, the trial court entered a Judgment Entry specifying the counts for which Appellant was found guilty, and the level of offense contained in the indictment for each count (i.e. rape 1st degree felony, 8 counts of GSI, felonies of the 3rd degree).
 {¶ 32} On June 4, 2007, the trial court sentenced Appellant on counts 5, 6 and 8-15. Appellant was sentenced to two years in prison on each count for counts 5 and 6. He was also sentenced to a prison term of 1 year on each count for counts 8 through 15. All sentences were ordered to run consecutively. (Sentencing Judgment Entry filed June 5, 2007). *Page 8 
 {¶ 33} This matter is now before this Court upon direct appeal of right of Appellant's conviction. Appellant assigns the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 34} "I. COUNSEL'S FAILURE TO HAVE APPELLANT'S MENTAL CONDITION OR PSYCHIATRIC EVALUATION TO DETERMINE HIS COMPETENCY TO STAND TRIAL RESULTED IN INEFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 35} "II. APPELLANT WAS DENIED STATUTORY RIGHTS.
 {¶ 36} "III. APPELLANT WAS SENTENCED IN CONTRAVENTION OF LAW."
 I., II {¶ 37} In his first and second assignments of error, Appellant argues that he received ineffective assistance of appellate counsel because trial counsel failed to have a competency evaluation performed and that such failure resulted in a violation of his statutory rights. We disagree.
 {¶ 38} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to Appellant. The second prong is whether Appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 39} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, supra at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, there is a *Page 9 
strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 40} Appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995),72 Ohio St.3d 545, 558 (citing Lockhart v. Fretwell (1993), 506 U.S. 364, 370,113 S.Ct. 838, 122 L.Ed.2d 180). Further, both the United States Supreme Court and the Ohio Supreme Court have held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley, supra. at 143 (quotingStrickland, supra. at 697).
 {¶ 41} In this case, Appellant's counsel's decision to not have a competency evaluation performed does not reflect ineffective assistance of counsel per se. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052,80 L.Ed.2d 674. Accord State v. Bird (1998), 81 Ohio St.3d 582, 585,692 N.E.2d 1013 (judicial scrutiny of counsel's tactical decisions must be highly deferential).
 {¶ 42} Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Strickland at 689-90. *Page 10 
 {¶ 43} The competency of a defendant is presumed. The presumption is rebutted only when a preponderance of the evidence shows that due to his present mental condition, the defendant was unable to understand the nature of the proceedings against him and could not assist in his defense. R.C. 2945.37(G); State v. Swift (1993), 86 Ohio App.3d 407,411, 621 N.E.2d 513.
 {¶ 44} Upon review, there is nothing in the record to demonstrate that Appellant was incompetent at the time of the trial. Appellant has not shown that he had any difficulty in communication with his trial counsel. Appellant has not shown that he was unable to assist in his own defense. Appellant, in fact, testified in his own defense at trial.
 {¶ 45} Upon review, we find that the conduct raised by Appellant does not rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record, we find Appellant was not prejudiced by defense counsel's representation of him. The results of the proceedings were not unreliable, nor were the proceedings fundamentally unfair because of the performance of defense counsel.
 {¶ 46} For the same reasons, we further find Appellant was not denied his statutory right to a fair trial based on the failure of his counsel to request a competency hearing.
 {¶ 47} Appellant's first and second assignments of error are denied.
 III. {¶ 48} In his third assignment of error, Appellant argues that he was sentenced in contravention of law. We disagree. *Page 11 
 {¶ 49} Appellant argues that pursuant to R.C. § 2945.75(A)(2) andState v. Pelfrey, 112 Ohio St.3d 422, 2007-Ohio-256, he is entitled to be re-sentenced .
 {¶ 50} R.C. § 2945.75(A)(2) requires that a guilty verdict state either the degree of the offense of which an offender is found guilty, or that the additional elements that make an offense one of a more serious degree are present. If neither is included, R.C. § 2945.75(A)(2) directs that "a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."
 {¶ 51} In Pelfrey, the Supreme Court of Ohio interpreted R.C. § 2945.75(A)(2) and held that "a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." Id. at syllabus.
 {¶ 52} Appellant raises this challenge in connection with his third-degree felony convictions for Gross Sexual Imposition, in violation of R.C. § 2907.05(A)(4).
 {¶ 53} In the case sub judice, the jury signed verdict forms for the Gross Sexual Imposition counts which read, in pertinent part:
 {¶ 54} "We, the jury, do find beyond a reasonable doubt the DEFENDANT, LOREN L. NETHERS, GUILTY OF GROSS SEXUAL IMPOSITION IN VIOLATION OF SECTION 2907.05 OF THE OHIO REVISED CODE."
 {¶ 55} The verdict form does not contain the degree of the offense or any statement of an aggravating element. Thus, Appellant contends that he can be convicted only of the least degree of the offense. We disagree. *Page 12 
 {¶ 56} The Tenth District Court of Appeals recently considered and rejected this very argument in terms of GSI convictions. See State v.Kepiro, Franklin App. No. 06AP-1302, 2007-Ohio-4593, at ¶ 29-34. InKepiro, the Tenth District held that there are no additional elements or circumstances over and above the elements of the offense set forth in R.C. § 2907.05(A) that enhance the penalty for a GSI conviction. With nothing more than the guilty verdict, an appellant is convicted of a third-degree felony. Thus, the reasoning in Pelfrey was not applicable, and the verdict form did not need to contain the degree of the offense or a statement that an aggravating element had been found by the jury. (See also, State v. Crosky, Tenth Dist. App. No. 06AP-655,2008-Ohio-145).
 {¶ 57} Upon review of the instant case, we find that the Gross Sexual Imposition statute under which Appellant was charged contains all the necessary elements of the offense. A violation of R.C. § 2907.05(A)(4) is a felony of the third degree. There are no additional elements or circumstances over and above the elements of the offense set forth R.C. § 2907.05(A)(4) that enhance the penalty for the conviction. Thus, the verdict form did not need to contain the degree of the offense or a statement that an aggravating element has been found by the jury. *Page 13 
 {¶ 58} Appellant's third assignment of error is denied.
 {¶ 59} For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.
Wise, J., Gwin, J., concurs.
 Hoffman, P. J., concurs in part and dissents in part. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed. Costs assessed to Appellant.