[Cite as *State v. Hasenyager*, 2016-Ohio-3540.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.    27756 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRUCE E. HASENYAGER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 2014 06 1692 |

DECISION AND JOURNAL ENTRY

Dated: June 22, 2016

SCHAFER, Judge.

{¶1} Defendant-Appellant, Bruce Hasenyager, appeals the judgment of the Summit County Court of Common Pleas convicting him of rape and gross sexual imposition and sentencing him to a total prison term of 20 years to life. Hasenyager also appeals from the sentence imposed by the trial court. For the reasons set forth below, we affirm.

I.

{¶2} Hasenyager is B.T.'s great uncle. On January 1, 2014, B.T., age 11, spent the night at Hasenyager's house in Stow, Ohio. That night, Hasenyager let B.T. sleep in his bedroom, which was not unusual. B.T. fell asleep that night while Hasenyager rubbed her back. B.T. alleges, however, that she awoke in the middle of the night to Hasenyager rubbing her private areas, over the clothing. B.T. testified that although she was awake during this inappropriate touching, she pretended to be asleep out of fear. B.T. also testified that Hasenyager has inappropriately touched her since she was seven years old, but never told

anybody about these occurrences. B.T. also alleges that, at some point, Hasenyager slid his hand underneath her underwear and penetrated her vagina with his finger. B.T. then got out of bed and went to the bathroom in an effort to escape the situation. B.T. eventually went back to bed, but asked Hasenyager to sleep on the couch that night, which he did.

{¶3} The following morning, Hasenyager got into bed with B.T. and again began rubbing her private areas above the clothing. B.T. testified that she again left the bed and went to the bathroom in an effort to escape the situation. Later that day, B.T.'s father picked B.T. up from Hasenyager's house and took her home. At home, B.T. told her father about Hasenyager's actions. B.T.'s father then took B.T. to the hospital where she received a physical examination. B.T.'s father also placed the underwear that B.T. had worn during her stay at Hasenyager's home inside of a plastic bag, which was turned over to law enforcement for testing by the Bureau of Criminal Investigation ("BCI").

{¶4} The Summit County Grand Jury indicted Hasenyager on one count of rape in violation of R.C. 2907.02(A)(1)(b), a first-degree felony, and three counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), third-degree felonies. Hasenyager pled not guilty and the matter proceeded to a jury trial.

{¶5} The jury ultimately convicted Hasenyager on all four counts contained within the indictment. The trial court sentenced Hasenyager to an indefinite term of life in prison for the rape offense. As a result, Hasenyager will not be eligible for parole on the rape offense until he serves ten years on the life sentence. The trial court also sentenced Hasenyager to five years in prison on each of the gross sexual imposition counts. The trial court ran Counts I and II concurrently with one another, but ran Counts III and IV consecutively to one another and

consecutively with Count I, meaning that Hasenyager is not eligible for parole until he serves at least 20 years in prison. Lastly, the trial court classified Hasenyager as a Tier III sex offender.

{¶6} Hasenyager filed this timely appeal, presenting three assignments of error for our review.

II.

### Assignment of Error I

**The trial court erred and abused its discretion in overruling the Appellant's objection to the Appellee's Motion to Permit Facility Dog to Accompany Witness; thereby, prejudicing the Appellant and ultimately denying his right to a constitutionally fair trial.**

{¶7} In his first assignment of error, Hasenyager argues that the trial court erred by granting the State's motion to permit a facility dog to accompany B.T. on the witness stand during her testimony at trial. Specifically, Hasenyager contends that the presence of the facility dog during B.T.'s testimony vilified his trial counsel and unfairly bolstered B.T.'s credibility in the eyes of the jury. We disagree.

{¶8} The trial court is vested with broad discretion as to how to control and order the interrogation of witnesses at trial. *State v. Young,* 2d Dist. Montgomery No. 18874, 2002 WL 471846, * 3 (Mar. 29, 2002), citing *State v. McGuire,* 80 Ohio St.3d 390, 400–401 (1997). A trial court abuses its discretion when its decision is "unreasonable, arbitrary[,] or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621 (1993).

{¶9} Evid.R. 611(A) provides as follows:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth; (2) avoid

needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

When applying Evid.R. 611(A) in the context of a criminal prosecution for alleged sexual abuse of a minor child, courts should "recognize that the protection of child victims of sexual abuse forms an important public policy goal in this state and across the nation." *State v. Eastham,* 39 Ohio St.3d 307, 310 (1988). "Due to this recognition, '[s]pecial accommodations * * * are often allowed for child victims of sexual abuse to minimize the emotional trauma and stress of having to testify in a courtroom full of strangers, along with the accused.'" *State v. Jacobs*, 9th Dist. Summit No. 27545, 2015-Ohio-4353, ¶ 21, quoting *State v. Gutierrez,* 3d Dist. Hancock No. 5–10–14, 2011–Ohio–3126, ¶ 100; *see also* Holder, *All Dogs Go to Court: The Impact of Court Facility Dogs as Comfort for Child Witnesses on a Defendant's Right to a Fair Trial,* 50 Hous.L.Rev. 1155, 1158 (2013) ("Children experience unique challenges on the witness stand, and in response, they receive special accommodations.").

{¶10} This Court has recently spoken on the issue of companion dogs accompanying child victims while they testify at trial. *See Jacobs*, 2015-Ohio-4353. In *Jacobs*, we held that Evid.R. 611(A) authorizes trial courts to permit an alleged victim to testify with a companion dog under particular circumstances. *Id*. at ¶ 24. We then concluded that, based upon the State's and victim's representations to the trial court regarding the use of a companion dog, the trial court in *Jacobs* did not abuse its discretion by allowing a companion dog to accompany the victim during her testimony at trial. *Id*. at ¶ 25.

{¶11} Likewise, based on the circumstances of this case, we cannot determine that the trial court erred by permitting a facility dog to accompany B.T. on the witness stand during her testimony. The record indicates that B.T. was 11 years old on the days in question, and was just 13 years old at the time of trial. The State's "Motion to Permit Facility Dog to Accompany

Witness" asserted that the dog's presence would "dramatically decrease the stress, harassment, and embarrassment that [B.T.] will endure" during her testimony. The State also asserted that the facility dog would help comfort B.T. as she testifies "in front of a large group of adult strangers" at trial. After hearing argument from the parties, the trial court agreed with the State's position. The trial court specifically found that the facility dog's presence would likely provide B.T. with "some calmness and some security" during her testimony and would "make the process more palatable for [B.T.]." As such, we conclude that Hasenyager has failed to demonstrate that the trial court abused its discretion in allowing the facility dog to accompany B.T. on the witness stand during her testimony.

{¶12} With regard to Hasenyager's contention that he was prejudiced by the facility dog's presence due to the dog's movements and interruptions, the trial court record does not reflect that the dog became agitated or that defense counsel objected to the dog's continued presence due to its purported agitation. It is impossible to discern from the record how the facility dog was behaving during cross-examination, as defense counsel failed to object to the dog's behavior or cause the record to reflect any behavior that he intended to challenge. Accordingly, we determine that Hasenyager has both failed to preserve this portion of his argument and to meet his burden of supporting such an argument with citations to the record. *See State v. George*, 9th Dist. Summit No. 27279, 2014-Ohio-5781, ¶ 31-32 (defendant has a duty to object at a point in time at which the trial court could have corrected the alleged error); App.R. 16(A)(7).

{¶13} Hasenyager's first assignment of error is overruled.

**Assignment of Error II**

**The jury lost its way in finding the Appellant guilty of Rape and Gross Sexual Imposition because the convictions are against the manifest weight of the evidence.**

{¶14} In his second assignment of error, Hasenyager contends that his rape and gross sexual imposition convictions are against the manifest weight of the evidence. We disagree.

{¶15} When applying the manifest weight standard, appellate courts are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson,* 9th Dist. Summit No. 26900, 2013–Ohio–5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶16} Hasenyager was convicted of rape in violation of R.C. 2907.02(A)(1)(b), which pertinently provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Hasenyager was also convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4), which provides that "[n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other

persons to have sexual contact when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶17} At trial, B.T., who was 11 years old on the days in question, testified that she awoke in the middle of the night to Hasenyager rubbing her vagina over her clothing. B.T. then testified that at one point, Hasenyager slid his hand down her underwear, rubbed her vagina, and "pushed" his fingers in "really hard," which caused her much pain. B.T. testified that she pretended to be asleep while Hasenyager touched her because she was afraid. B.T. testified that she eventually got out of bed and went to the bathroom in order to escape the situation, after which she watched a movie on the living room couch while Hasenyager again rubbed her body. B.T. later went back to bed, but asked Hasenyager to sleep on the couch, which he reluctantly did. B.T. stated that the next morning, Hasenyager crawled into bed next to her, pulled her leg towards his body, and again rubbed her vagina and anus, over her underwear. B.T. stated that after Hasenyager stopped touching her, she wanted to go next door to a friend's house in order to ask for help in getting away from her great uncle, but that Hasenyager forcibly restrained her and would not allow her to leave the house. Lastly, B.T. stated that Hasenyager has touched her inappropriately in a similar fashion ever since she was seven years old. B.T.'s subsequent recounting of Hasenyager's actions has been consistent. Moreover, BCI testing revealed that Hasenyager's touch DNA was present on the inside of B.T.'s underwear.

{¶18} Hasenyager argues that his convictions are against the manifest weight of the evidence due to the lack of physical evidence indicating that a rape had occurred and because B.T. lacked credibility. In support of his contention that B.T. lacked credibility, Hasenyager argues that B.T. is "a young girl who has serious psychological issues," that B.T. did not attempt to seek help during her stay with him, that B.T.'s allegations against him were retaliation for his

refusal to let her go over a to a friend's house while she was in his care, and that B.T.'s therapist allegedly coached B.T. through her trial testimony.

{¶19} However, all of Hasenyager's arguments were specifically addressed at trial. For example, Donna Abbott, the nurse practitioner at the Akron Children's Hospital's Children At Risk Evaluation Center, testified that she gave B.T. a physical examination the day after she first reported being raped by her great uncle. Ms. Abbott testified that B.T. exhibited no signs of vaginal bleeding, redness, disruptions, or tears. However, Ms. Abbott also testified that although the physical examination did not reveal any abnormal finding, it is "very rare to find physical injuries, especially with digital penetration or penetration with a finger" and that less than five percent of children that allege being digitally penetrated manifest physical findings.

{¶20} Additionally, Hasenyager attacked B.T.'s credibility on cross examination with regard to each issue addressed in his appellate brief and the jury still elected to convict him on all four counts contained within the indictment. "This Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. Here, the jury apparently accepted B.T.'s testimony. "The jury has the right to place considerable weight on the testimony of the victim." *State v. Felder*, 9th Dist. Lorain No. 91CA005230, 1992 WL 181016, *1 (July 29, 1992). B.T.'s testimony, if believed, supports the conclusion that Hasenyager inappropriately touched and raped her. Although Hasenyager attempted to show at trial that B.T. was lying, the jury was free to disregard that theory.

{¶21} After a thorough review of the record, we cannot conclude that the jury lost its way and committed a manifest miscarriage of justice in convicting Hasenyager of gross sexual

imposition and rape. We, therefore, conclude that Hasenyager's convictions are not against the manifest weight of the evidence.

**{¶22}** Accordingly, Hasenyager's second assignment of error is overruled.

### Assignment of Error III

**The trial court erred in sentencing Mr. Hasenyager to five years in prison for each count of Gross Sexual Imposition as a felony of the third degree because the jury did not find that [] the victim was under the age of 13 as required by R.C. 2945.75(A)(2); thereby, making the Counts of each Gross Sexual Imposition felonies of the fourth degree.**

**{¶23}** In his third assignment of error, Hasenyager argues that the verdict forms in this case were deficient because they did not specify the level of the gross sexual imposition charges as felonies of the third-degree and did not state that an aggravating circumstance had been found by the jury to elevate the charged offenses from fourth-degree felonies to third-degree felonies. Hasenyager contends, therefore, that the trial court erred by sentencing him on the gross sexual imposition charges as if they were third-degree felonies, rather than fourth-degree felonies. We disagree.

**{¶24}** Hasenyager's argument relies on R.C. 2945.75, which states:

(A) When the presence of one or more additional elements makes an offense one of a more serious degree:

(1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise, such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.

(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

In *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, the Supreme Court of Ohio determined that "[p]ursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *Id*. at syllabus. "Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged." R.C. 2945.75(A)(2). Hasenyager contends that R.C. 2945.75 and *Pelfrey* are applicable in this matter because R.C. 2907.05 provides for different offense levels.

{¶25} In support of this argument, Hasenyager cites to *State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042. There, the Supreme Court of Ohio reiterated its holding in *Pelfrey* and stated that "*in cases involving offenses for which the addition of an element or elements can elevate the offense to a more serious degree*, the verdict form itself is the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." (Emphasis added) *Id*. at ¶ 17. Thus, the Court held that in order to convict a defendant of failing to comply with an order of a police officer in violation of R.C. 2921.331(B), as enhanced by R.C. 2921.331(C)(5)(a)(ii), the verdict form must satisfy the dictates of *Pelfrey*. *See id*. at ¶ 19. That is, the verdict form must either state that the defendant was guilty of a third-degree felony or set forth the additional elements that transform the failure to comply with the order or signal of a police officer from a misdemeanor to a third-degree felony. *Id*.

{¶26} Hasenyager's reliance upon *McDonald* is misplaced as that case is quite distinguishable from this matter. In *McDonald*, the defendant was charged with failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B) and R.C. 2921.331(C)(5)(a)(ii). A violation of R.C. 2921.331(B) is a first-degree misdemeanor, but the

enhancement element of R.C. 2921.331(C)(5)(a)(ii), a finding that the defendant's operation of a motor vehicle caused a substantial risk of serious physical harm to persons or property, elevates a violation of R.C. 2921.331(B) to a third-degree felony. R.C. 2921.331(C)(3); R.C. 2921.331(C)(5)(a)(ii). Thus, because R.C. 2921.331 provides for potential enhancements, the Ohio Supreme Court held that the verdict form either had to state that the defendant was guilty of a third-degree felony or set forth the additional elements that transform the failure to comply with the order or signal of a police officer from a misdemeanor to a third-degree felony. *McDonald* at ¶ 19-20. As the verdict form was deficient in this regard, the Court held that, pursuant to R.C. 2945.75(A)(2), the verdict form in that case must "yield[] a guilty verdict that 'constitutes a finding of guilty of the least degree of the offense charged,'" which was a first-degree misdemeanor under R.C. 2921.331(C)(3). *Id.* at ¶ 25, quoting R.C. 2945.75(A)(2).

{¶27} Here, however, Hasenyager was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4), a completely different statute than that which was at issue in *McDonald*. In *State v. Edwards*, 9th Dist. Lorain No. 12CA010274, 2013-Ohio-3068, this Court held that *Pelfrey* does not apply to R.C. 2907.05(A)(4), explaining:

> A violation of R.C. 2907.05(A)(4) is a felony of the third degree. R.C. 2907.05(C)(2). There are no additional elements that will enhance this offense to a higher degree. R.C. 2907.05 does contain other subsections, but each has their own separate elements. Here, as charged in the indictment, the State was required to prove that [the defendant] had sexual contact with [the victim] for the purpose of sexual arousal or gratification and that [the victim] was under the age of thirteen at the time of the offense. Failure to prove any of these elements would have resulted in an acquittal, not a conviction of a lesser degree of gross sexual imposition.

*Id.* at ¶ 35-36; *see also State v. Nethers*, 5th Dist. Licking No. 07 CA 78, 2008-Ohio-2679, ¶ 57 (concluding that the verdict form did not need to contain the degree of the offense or a statement that an aggravating element has been found by the jury because "[t]here are no additional

elements or circumstances over and above the elements of the offense set forth [in] R.C. [] 2907.05(A)(4) that enhance the penalty for the conviction."). Unlike the statute addressed in *McDonald*, there are no additional elements within R.C. 2907.05 that will enhance that offense to a higher degree. *Edwards* at ¶ 35-36. As such, this matter does not fall within the *Pelfrey-McDonald* ambit and R.C. 2945.75's provisions are inapplicable. We therefore determine that the jury verdict form in this case was not deficient and that the trial court did not err by sentencing Hasenyager on the gross sexual impositions counts as felonies of the third degree.

{¶28} Hasenyager's third assignment of error is overruled.

III.

{¶29} With all of Hasenyager's assignments of error having been overruled, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

—————————————————

JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
<u>CONCURS.</u>

MOORE, P. J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

**{¶30}** I concur in the judgment.

**{¶31}** With respect to the first assignment of error, I write separately to note that that I do not read the present decision or this Court's decision in *State v. Jacobs*, 9th Dist. Summit No. 27545, 2015-Ohio-4353, to allow the trial court unfettered discretion in permitting special accommodations to witnesses. In *Jacobs*, this Court discussed the Appellate Court of Connecticut's decision in *State v. Devon D.* ("*Devon D. I*"), where the defendant had appealed the trial court's decision to permit a therapy dog to sit with a child victim during her testimony. *See Jacobs* at ¶ 23, 25; *State v. Devon D.,* 150 Conn.App. 514 (2014). In *Devon D. I*, the Appellate Court cited numerous cases pertaining to special accommodations for witnesses, emphasizing whether the accommodation was necessary *for that particular witness*. *Id.* at 543-49 (collecting cases and placing emphasis on the words "*required the accommodation*[,]" "*compelling necessity*[,]" "*was needed*[,]" "*the particular needs of that child*[,]" "*need for [the dog]*[,]" and "*implied findings of necessity*") (Emphasis in original.). The *Devon D. I* Court concluded that "the court has the inherent general discretionary authority to permit a suitably trained dog to sit near a witness when a need clearly is demonstrated[.]" *Id.* at 549. *Devon D. I*

was recently reversed by the Connecticut Supreme Court in *State v. Devon D.*, ("*Devon D. II*") ___A.3d____, 2016 WL 3194779, *12 (Conn.2016). In *Devon D. II*, the Court concluded "that the pivotal question is not whether the special procedure is necessary but whether it will aid the witness in testifying truthfully and reliably." *Id.* The *Devon D. II* Court developed the following standards to be applied in making this determination:

> We conclude that the trial court may exercise its discretion to permit a dog to provide comfort and support to a testifying witness. Before doing so, the court must balance the extent to which the accommodation will help the witness to testify reliably and completely against any possible prejudice to the defendant's right to a fair trial. The trial court should consider *the particular facts and circumstances* for the request to have a dog accompany *the particular witness*, the extent to which the dog's presence will permit the witness to testify truthfully, completely and reliably, and the extent to which the dog's presence will obviate the need for more drastic measures to secure the witness' testimony. The trial court should balance these factors against the potential prejudice to the defendant and the availability of measures to mitigate any prejudice, such as limiting instructions and procedures to limit the jury's view of the dog.

(Emphasis added.) *Id.* at *15.

{¶32} I do not believe our decision in this case or in *Jacobs* forecloses this Court from adopting a standard for the trial court to employ when exercising its discretion as to whether to permit the presence of the facility dog. Like the Courts in *Devon I* and *Devon II*, I believe such a standard should in some measure require consideration of the *particular* witness for whom the service dog's presence is requested, and not be based solely upon generalities.

{¶33} Nonetheless, here, Mr. Hasenyager's argument on appeal with respect to B.T.'s need for the dog does not clearly advance a specific standard for the trial court to employ in exercising its discretion in these matters, and he has not demonstrated that any potential prejudice was not cured through the trial court's instruction to the jury with respect to the dog. *See Devon D. I*, 150 Conn.App. at 550, fn. 13 (declining to address whether trial court cured possible prejudice to defendant through its jury instruction where case was remanded for a new

trial on different grounds); *State v. Thompson*, 141 Ohio St.3d 254, 282, 2014-Ohio-4751, ¶ 150 (reviewing court presumes that the jury followed the judge's instruction). Accordingly, given the limits of the record and of Mr. Hasenyager's arguments, I agree that his first assignment of error is properly overruled.

APPEARANCES:

JONATHAN T. SINN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.