[Cite as *State v. Fannin*, 2017-Ohio-7544.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

    v.

HAROLD A. FANNIN

    Appellant

C.A. No.    16CA0053-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    15 CR 0513

DECISION AND JOURNAL ENTRY

Dated: September 11, 2017

TEODOSIO, Judge.

{¶1} Appellant, Harold A. Fannin, appeals from his convictions in the Medina County Court of Common Pleas. We affirm.

I.

{¶2} In December of 2011, Mr. Fannin began a relationship with L.R. and soon moved into her residence in Medina. L.R. already had two children from a previous relationship, including the victim in this case ("H.R."). Mr. Fannin and L.R. also had a child together in November of 2012 and were married in June of 2013.

{¶3} In March of 2015, Mr. Fannin called L.R. to tell her to come home because her twelve-year-old daughter, H.R., had consumed alcohol. L.R. returned home to find H.R. crying hysterically on the floor. H.R. told her mother that Mr. Fannin made her drink and "he put it in me." She told her mother and police that several months ago Mr. Fannin had provided her with marijuana in the house on two consecutive days. On the second day, he also walked in on her in

the bathroom while she was on the toilet, asked her if she ever masturbated or had an orgasm, had her lie down on the floor, shaved her private parts, and inserted two fingers into her vagina. Mr. Fannin and H.R. then played Call of Duty together in his bedroom and agreed to "play for dares." Mr. Fannin initially had H.R. suck his big toe twice, then had her suck his left testicle, then take off her pants and perform fellatio on him, and then sit on his penis. He inserted his penis into her vagina, but it hurt H.R., so he retrieved lubrication from his dresser drawer and engaged in vaginal intercourse with her again. Afterward, he made her shower and promise not to tell anyone.

{¶4} Mr. Fannin was arrested and charged with four counts of rape, one count of gross sexual imposition, and two counts of corrupting another with drugs. The indictment alleged that Mr. Fannin purposely engaged in sexual conduct with H.R. and compelled her by force or threat of force to submit to digital penetration, fellatio, and vaginal intercourse. It further alleged that Mr. Fannin purposely had sexual contact with H.R. by touching her pubic region and that he knowingly furnished or administered marijuana to H.R.

{¶5} Mr. Fannin waived his right to a jury trial and the case proceeded to a bench trial. After trial, the court found Mr. Fannin guilty of all seven counts. He was ultimately sentenced to an aggregate total of ten years to life in prison.

{¶6} Mr. Fannin now appeals from his convictions and raises one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE TRIAL COURT'S VERDICT OF "GUILTY" AS TO ALL SEVEN COUNTS OF THE INDICTMENT, AND THE DEFENDANT'S CONVICTIONS AS TO ALL

SEVEN COUNTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} In his sole assignment of error, Mr. Fannin argues that his convictions were based on insufficient evidence and against the manifest weight of the evidence. We disagree with both propositions.

{¶8} Mr. Fannin was convicted of four counts of rape under R.C. 2907.02(A)(1)(b), which states, in part, "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." "Sexual conduct" is defined as:

> [V]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A).

{¶9} Mr. Fannin was also convicted of gross sexual imposition under R.C. 2907.05(A)(4), which states, in part, "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." "Sexual contact" includes "any touching of an erogenous zone of another, including without limitation the * * * pubic region * * * for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶10} Finally, Mr. Fannin was convicted of two counts of corrupting another with drugs under R.C. 2925.02(A)(4)(a), which states, in part, "[n]o person shall knowingly * * * [b]y any means * * * [f]urnish or administer [marijuana] to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard * * *." "A person acts knowingly, regardless of purpose, when the person is aware that the

person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

## Sufficiency of the Evidence

{¶11} Mr. Fannin claims that the State of Ohio failed to establish that he engaged in sexual conduct with H.R. and failed to establish that he purposely had sexual contact with H.R.'s pubic region.

{¶12} "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶13} The evidence presented, if believed, established that Mr. Fannin engaged in sexual conduct with H.R. and purposely had sexual contact with her pubic region. The victim's mother, L.R., testified that she first noticed that H.R. had trimmed or shaved her private parts in January of 2015 and thought it was unusual because H.R. is a "tomboy" who would not even shave her legs. When L.R. asked about it, H.R. initially explained that she had shaved for basketball. At some point in January, L.R. and H.R. had an argument over H.R.'s request to stay

at her grandmother's house and L.R.'s demand that H.R. return home immediately. L.R. threatened to take away H.R.'s Xbox or phone and H.R. revealed that Mr. Fannin had previously given her marijuana. L.R. confronted Mr. Fannin and he did not deny the allegations. Mr. Fannin explained that he had given H.R. marijuana because "he didn't want her trying it outside the house. He knew he was there in case - - to let her try it and to let her know that she wouldn't like it * * *."

{¶14} In March of 2015, Mr. Fannin called L.R. and told her that she needed to come home because her daughter had consumed alcohol. Mr. Fannin left the area as L.R. arrived home. H.R. was on the floor crying hysterically and told L.R. that Mr. Fannin had made her drink alcohol, forced her to drink a bunch of water, and shoved his fingers down her throat to make her vomit. H.R. also said, "He put it in me," and L.R. called 911. Police responded and an ambulance transported H.R. to the hospital.

{¶15} H.R. is a student athlete who plays football, basketball, and softball, and receives A's and B's in school. She testified that, in March of 2015 when she was intoxicated and taken to the hospital by ambulance, she revealed to her mother and the police that she had been sexually assaulted by Mr. Fannin back in December of 2014. She originally thought it had occurred on New Year's Eve, but later recalled that it was the day her grandmother bought her a Cavs blanket and the receipt for the purchase of the blanket was dated December 18th.

{¶16} She testified that, on December 17th, Mr. Fannin was updating his PlayStation or Xbox and told her that he was "going to smoke [his] laughing gas," and she understood what that meant due to social media. He asked her if she wanted to try it and she said, "Sure." In the bathroom, Mr. Fannin showed her how to smoke marijuana and said, "You hit it." He also made her take off her sweatshirt so she would not smell like marijuana because "the odor would stay."

H.R. testified that it felt like the world was spinning, but she was pretty sure they played a video game before she went to sleep that night.

{¶17}  The following night, December 18th, Mr. Fannin asked H.R. if she wanted to smoke marijuana again and she said, "Sure."  They smoked in the bathroom and Mr. Fannin also gave her some Redd's Apple Ale to drink.  Afterward, H.R. stayed in the bathroom with the door shut because she had to urinate.  Mr. Fannin re-entered the bathroom while H.R. was on the toilet, looked at her private parts, and told her that she needed to shave.  He told her she could use Nair and he attempted to put some on her private parts, but it did not work well.  Instead, Mr. Fannin retrieved an electric razor from the cabinet under the sink.  He had H.R. lie down on the floor and proceeded to shave her private parts.  He asked if she had ever masturbated or if she ever had an orgasm and she said no to both.  Mr. Fannin then attempted to give her an orgasm by sticking two fingers into her vagina, but it hurt H.R.  She testified that she did not want him to do it, did not ask him to do it, and was surprised when he did it.

{¶18}  She testified that the two then went to Mr. Fannin's bedroom to play Call of Duty on the PlayStation.  There was an understanding that they were going to "play for dares," which meant that if Mr. Fannin killed H.R. in the game, he could dare her to do something and vice versa.  Mr. Fanning killed H.R. in the game multiple times.  The first two times, he dared her to suck his big toe and she complied.  Then Mr. Fannin dared her to suck his left testicle and she complied because she was scared he would "freak out" if she said no.  He then dared her to suck his penis and made her pull down her pants.  She complied and Mr. Fannin began "grabbing [her] butt" while she performed fellatio on him.  Next, Mr. Fannin dared H.R. to sit on his penis.  H.R. sat down on his penis and Mr. Fannin said, "No, not like that."  He tried to put his penis inside of her vagina, but it hurt H.R.  He asked her if she wanted him to put something on it so it

would feel better. He went to his dresser, retrieved something, and put it on his penis. He then inserted his penis into her vagina again, but it still hurt H.R. Mr. Fannin made H.R. take a shower afterward. He joined her in the shower and washed her hair and body. He told her, "You have to promise me that you'll never tell. I'll get in so much trouble * * *." H.R. said, "Promise," and testified that she took the promise very seriously.

{¶19} She testified that she did not tell anyone because she was scared of ruining her mother's happiness, taking her sister's father from her, and Mr. Fannin "doing something" to H.R.'s family. She was very upset in the ambulance in March of 2015 because she had broken her promise. A compact disc containing an audio recording of H.R.'s statements from the ambulance in the sally port of the hospital was introduced as evidence. H.R. testified that she intended to keep her promise, but could not hold it in anymore. She was afraid it would happen again if she kept the promise any longer. She wrote down her feelings on a piece of paper and was going to tell her mother, but just threw the paper in her closet instead.

{¶20} After reviewing the evidence contained in the record in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented sufficient evidence from which a rational trier of fact could have concluded that Mr. Fannin engaged in sexual conduct with H.R. and purposely had sexual contact with H.R.'s pubic region. Specifically, H.R. testified that Mr. Fannin attempted to use Nair on her private parts and then shaved her private parts with an electric razor. She also testified that he used two fingers to digitally penetrate her vagina, had her perform fellatio on him, and engaged in vaginal intercourse twice with her.

Manifest Weight of the Evidence

{¶21} This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. "This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction." *State v. Hamilton*, 9th Dist. Lorain No. 15CA010830, 2017-Ohio-230, ¶ 20.

{¶22} Mr. Fannin argues that there was no physical evidence corroborating H.R.'s testimony. However, "a rape victim's testimony need not be corroborated by physical evidence in order to sustain a conviction." *State v. Arias*, 9th Dist. Lorain. No. 04CA008428, 2004-Ohio-4443, ¶ 32. Mr. Fannin has not directed us to any case law to the contrary. *See State v. Gordon*, 9th Dist. Summit No. 28191, 2017-Ohio-5796, ¶ 36. Moreover, Mr. Fannin committed these crimes in December of 2014, but H.R. testified that she did not tell anyone for several months because she was scared and she made a promise to Mr. Fannin that she would not tell anyone. "[I]t is not uncommon for victims of abuse to delay their reporting." *State v. Powell*, 9th Dist. Lorain No. 12CA010284, 2014-Ohio-63, ¶ 17. "The lack of physical evidence in a case where such evidence was unlikely due to the passage of time does not detract from the victim's testimony." *State v. Morris*, 9th Dist. Medina No. 09CA0022-M, 2012-Ohio-6151, ¶ 63.

{¶23} Mr. Fannin also argues that H.R.'s testimony was inconsistent with the story that she initially told her mother and the police. When H.R. first revealed Mr. Fannin's crimes in March of 2015, she said that they occurred back on New Year's Eve. However, H.R. was intoxicated while speaking to her mother and police and she testified at trial that she had consumed six-to-eight Redd's Apple Ales that night. L.R., Sheriff's Deputy Frank Telatko, and Detective James Cartwright also all testified that H.R. was distraught, hysterical, and crying that night. H.R. later realized that the sexual assaults actually occurred on December 18, 2014, the day her grandmother had purchased a Cavs blanket for her. Nevertheless, "[t]he exact date and time are not normally essential in a rape prosecution under R.C. 2907.02(A)(1)." *State v. Hiltabidel*, 9th Dist. Summit No. 11971, 1985 WL 10801, *2 (May 1, 1985).

{¶24} Mr. Fannin argues that H.R.'s testimony was inconsistent because she did not initially tell her mother and police that he first attempted to use a Nair hair removal product on her. Although H.R. may have initially left out the fact that Mr. Fannin first attempted to use Nair on her before ultimately shaving her private parts with a razor and digitally penetrating her vagina, the failure to include such a minor fact in her otherwise detailed account of the crimes given the surrounding circumstances does not show that her testimony was inconsistent with her prior statements. *See State v. Moore*, 9th Dist. Lorain No. 13CA010493, 2015-Ohio-2474, ¶ 7.

{¶25} "This Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. The trier of fact "has the right to place considerable weight on the testimony of the victim." *State v. Felder*, 9th Dist. Lorain No. 91CA005230, 1992 WL 181016, *1 (July 29, 1992). Although Mr. Fannin attempted to show at trial that H.R. was making false accusations against him to avoid getting into trouble herself, the

trier of fact was free to disregard that theory. *See State v. Hasenyager*, 9th Dist. No. 27756, 2016-Ohio-3540, ¶ 20. The State's witnesses were all subject to cross-examination and Mr. Fannin took the stand to deny the accusations against him. A conviction is not against the manifest weight because the trier of fact chose to credit the State's version of events. *State v. Peasley*, 9th Dist. Summit No. 25062, 2010-Ohio-4333, ¶ 18.

**{¶26}** After a thorough review of the record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot conclude that the trier of fact clearly lost its way and created a manifest miscarriage of justice. *See Otten* at 340. This is also not the exceptional case where the evidence weighs heavily in favor of the defendant and against conviction. *See Hamilton* at ¶ 20.

**{¶27}** Mr. Fannin's first assignment of error is overruled.

### III.

**{¶28}** Mr. Fannin's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.