[Cite as *State v. Watts*, 2016-Ohio-5386.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 15AP-951 |
| | | (C.P.C. No. 14CR-4741) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Phillip D. Watts, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 16, 2016

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

**On brief:** *Barnhart Law Office, LLC,* and *Robert B. Barnhart*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Phillip D. Watts, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of disseminating matter harmful to juveniles and two counts of gross sexual imposition. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} By indictment filed September 5, 2014, plaintiff-appellee, State of Ohio, charged Watts with one count of disseminating matter harmful to juveniles in violation of R.C. 2907.31, a fourth-degree felony, and four counts of gross sexual imposition in violation of R.C. 2907.05, third-degree felonies. The offenses related to Watts' conduct with two victims, L.R. and M.R., both seven years old. Watts entered a plea of not guilty.

{¶ 3}   Prior to the commencement of trial, Watts filed a motion in limine to determine whether statements L.R. and M.R. made during their medical forensic interviews were for medical purposes or investigative purposes.  Emily Combes, a social worker and medical forensic interviewer at the Children's Advocacy Center at Nationwide Children's Hospital, testified at the motion hearing that on July 15, 2014 she interviewed both L.R. and M.R. and that those interviews were recorded.  The state played the video recording of both L.R.'s and M.R.'s interviews with Combes.   Combes testified her questions to both L.R. and M.R. were for the purpose of medical diagnosis and treatment.  Combes explained that "it's in the child's best interest to have as few interviews as possible for mental health purposes."   (Tr. Vol. I at 35.)   After she conducted her interviews with L.R. and M.R., other members of the girls' treatment team had access to the interviews and could use that information in further diagnoses and treatment of the child.  Combes testified that one of the purposes of her interviews with the victims was to inform the necessary "referrals or recommendations to the mental health treatment following the appointment." (Tr. Vol. I at 48.)

{¶ 4}   After taking testimony and reviewing the tapes of the interviews, the trial court asked defense counsel "what statements are you contending should not be admitted if the girls do not testify as statements made for investigatory purposes versus medical treatment and diagnosis?"  (Tr. Vol. I at 57.)  Defense counsel responded that "just based on the interview, the briefness of the interview and the questions asked, Your Honor, I would submit that the entire interview be excluded."   (Tr. Vol. I at 57.)   The state responded it intended to show the entire interview at trial as statements made for the purpose of medical diagnosis and treatment.  Defense counsel argued that if the state wished to introduce the video, it was more proper to seek admission under Evid.R. 807 rather than Evid.R. 804.  The trial court heard arguments and indicated it would rule on the video's admissibility if and when it was introduced during trial.

{¶ 5}   At the August 3, 2015 trial, A.R., the victims' great uncle, testified he lives in Mount Vernon and that L.R. and M.R. visit him frequently and stay with him during their summer breaks from school.  In summer 2014, A.R. said L.R. and M.R. were staying at his house and they went for a walk with a friend who was older than L.R. and M.R.  During that walk, L.R. and M.R. started crying and eventually told the friend that "they had been

touched." (Tr. Vol. II at 161.) Eventually, L.R. and M.R. told A.R. the same thing they had told their friend on the walk, and A.R. said he talked to each girl separately and each "more or less reaffirmed in [their] own words" what had happened. (Tr. Vol. II at 163.) On the advice of a local Mount Vernon pediatrician, A.R. said he took L.R. and M.R. to Nationwide Children's Hospital in Columbus and called the girls' mother to have her meet them there.

{¶ 6} T.R., the mother of L.R. and M.R., testified that she began dating Watts in 2010 and that he frequently stayed with her and her daughters. T.R. ended her relationship with Watts in summer 2014 when her daughters made their disclosure of abuse. L.R. and M.R. were seven years old at the time. T.R. testified that the first time she ever heard that Watts had inappropriately touched her daughters was when A.R. called her and told her he was taking the girls to Nationwide Children's Hospital.

{¶ 7} Dr. Farah Brink, board certified in both general pediatrics and child abuse pediatrics, testified that she was working at Nationwide Children's Hospital on July 15, 2014 when she evaluated two minor patients, L.R. and M.R., after they had disclosed sexual abuse by Watts, their mother's boyfriend. Before examining the girls, Dr. Brink said she spoke with the forensic interviewer and she knew what disclosures of abuse L.R. and M.R. had made before she saw them. Dr. Brink examined both girls and testified she found no unusual physical findings but that would not be unusual given the time that had elapsed between the alleged conduct and the examination. Dr. Brink also explained that the treatment team uses the forensic interviewer's interview to assess "any possible mental health needs for the child or the family." (Tr. Vol. II at 127.)

{¶ 8} Both victims testified at trial. L.R. testified that she shared a room with her mom and her siblings and that Watts would sleep in the same room with them. L.R. did not answer a question about what Watts did to her, and she said she was scared. She testified she did not remember what kind of pictures Watts would show her on his phone. L.R. testified that Watts had done something bad to her but that she could not remember what part of her body he had touched. L.R. said she did remember telling her great uncle and her mom what Watts had done. L.R. testified she did not want to be touched the way Watts touched her.

{¶ 9}   M.R. testified that Watts "did a mean thing."  (Tr. Vol. III at 249.)  M.R. said she did not want to testify about the things Watts did to her.  She testified Watts would sometimes wake her up in the middle of the night.

{¶ 10} Combes also testified during the trial.  Prior to her testimony, defense counsel renewed its objection to the playing of the taped interviews, stating:

> Prior to our last hearing, there was lots of discussion about whether or not the girls would testify.  This court had indicated that it wouldn't be an issue provided the girls did testify.  Your Honor, the girls did testify today.  They were not treated as hostile.  The video cannot be used as impeachment purposes at this point.  Your Honor, I would just like to reflect - - state that this cannot be admitted pursuant to Rule 807, none of the requirements have been met to admit any statements of sexual or physical abuse pursuant to the Ohio Rule 807.  Also, pursuant to Arnold, these statements are not admissible, Your Honor.  If it is the court's intention to show the video, just ask that it be redacted to just show the statements that are used for medical diagnosis, Your Honor.

(Tr. Vol. III at 267-68.)  The trial court responded:

> The answer hasn't changed.  I think under Arnold it is admissible, and I don't think that there has been any request for any particular statements to have been redacted until now right before the witness is going to take the stand.  So we will go ahead and let the video be played over the defendant's objection.

(Tr. Vol. III at 268-69.)

{¶ 11} Combes testified she interviewed L.R. and M.R. at the Children's Advocacy Center at Nationwide Children's Hospital on July 15, 2014.  Combes said that "[i]deally," children undergoing a forensic interview are interviewed "only one time" because "[i]t reduces trauma that the child can experience" from having to relive the incident.  (Tr. Vol. III at 274.)  She said the rest of the child's treatment team, including mental health professionals, then has access to the interview for purposes of diagnosing and treating the child.

{¶ 12} The state first played the video recording of Combes' interview with L.R.  In the interview, L.R. stated "Mommy had a boyfriend named [Watts]" and "he was doing bad things to us and he put his fingers up us."  (State's Ex. 1 at 8.)  L.R. said Watts did it

"more than one time." (State's Ex. 1 at 8.) When asked how she knew Watts "put his finger up [M.R.] too," L.R. said she was in the bathroom with M.R. when Watts unlocked the door using a quarter and "kicked [L.R. and M.R.] and all that stuff and all that." (State's Ex. 1 at 11.) Combes asked L.R. how Watts had been mean to her mother, and L.R. said "[h]e's been kicking her the same thing as us and doing different stuff, but we saw it." (State's Ex. 1 at 15.) Combes then asked for more details about "when [Watts] was being mean to Mommy," and L.R. said "[h]e was kicking her, hitting her and all that stuff and I forget the rest, but [M.R.] knows it too." (State's Ex. 1 at 15.) L.R. said she felt "[b]ad" when she saw Watts kicking and hitting her mother. (State's Ex. 1 at 15.)

{¶ 13} Combes then asked L.R. if "somebody [has] shown you pictures or movies of people with no clothes on," and L.R. said Watts had showed her pictures of a boy's "front private." (State's Ex. 1 at 18.) L.R. said Watts zoomed in on the photograph on his phone to the boy's genitals and then zoomed out again. L.R. said Watts took the picture of the boy. L.R. said she did not know who boy in the photograph was, but when asked whether the photograph was of an adult or a child, L.R. said he was "a kid." (State's Ex. 1 at 20.)

{¶ 14} Next, the state played the recording of M.R.'s interview. Defense counsel again objected, and the trial court overruled the objection. During her interview, M.R. stated Watts "has been mean a lot of times." (State's Ex. 4 at 9.) When asked if Watts is only mean to her or if he is mean to other people, M.R. said Watts has been mean to her friends. M.R. also told Combes during the interview that Watts had touched her "front private" using "his hands." (State's Ex. 4 at 14.) M.R. said Watts touched her when they were "in [her] mom's room." (State's Ex. 4 at 20.)

{¶ 15} Following deliberations, the jury returned guilty verdicts for the disseminating matter harmful to juveniles count and two of the gross sexual imposition counts. The jury returned verdicts of not guilty for the remaining two counts of gross sexual imposition. The trial court conducted a sentencing hearing on September 23, 2015 and imposed a 12-month sentence on the disseminating matter harmful to juveniles conviction, a 48-month sentence on one of the gross sexual imposition convictions, and a 48-month sentence on the other gross sexual imposition conviction. The trial court ordered the sentences to run concurrently to each other for an aggregate sentence of 48 months' imprisonment. Additionally, the trial court classified Watts as a Tier II sexual

offender.  The trial court journalized Watts' convictions and sentence in a September 23, 2015 judgment entry.  Watts timely appeals.

## II. Assignments of Error

{¶ 16} Watts assigns the following error for our review:

1. The trial court erred when it admitted improper hearsay evidence against the defendant.

2. The trial court erred when it admitted irrelevant and prejudicial evidence against the defendant.

3. The trial court violated appellant's right to procedural due process.

4. Appellant received ineffective assistance of counsel.

## III. First and Second Assignments of Error – Evidentiary Rulings

{¶ 17} In his first assignment of error, Watts argues the trial court erred when it admitted improper hearsay evidence.  In his second assignment of error, Watts argues the trial court erred when it admitted irrelevant and prejudicial evidence.  Because Watts' first two assignments of error both address alleged errors the trial court made in its evidentiary rulings, we address them jointly.  Generally, the admission or exclusion of evidence lies in the sound discretion of the trial court, and we will not disturb that decision absent an abuse of discretion.  *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 16, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001).  An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

### A. Impermissible Hearsay

{¶ 18} Watts first argues that the trial court abused its discretion in admitting the recordings of the interviews of L.R. and M.R. conducted at the Children's Advocacy Center because those interviews contain impermissible hearsay.  A statement is impermissible hearsay when it is an out-of-court statement offered for the truth of the matter asserted.  Evid.R. 801(C) and 802.  However, pursuant to Evid.R. 803(4), "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause

or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are excepted from the hearsay rule.

{¶ 19} In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, the Supreme Court of Ohio held that "[s]tatements made to interviewers at child-advocacy centers that are made for medical diagnosis and treatment are nontestimonial and are admissible without offending the Confrontation Clause." *Arnold* at paragraph two of the syllabus. However, "statements made to interviewers at child-advocacy centers that serve primarily a forensic or investigative purpose are testimonial and are inadmissible pursuant to the Confrontation Clause when the declarant is unavailable for cross-examination." *Arnold* at ¶ 44.

{¶ 20} Initially, we note that both L.R. and M.R. testified at trial. Watts argues, however, that even though there is no Confrontation Clause issue in the recorded interviews of L.R. and M.R., those interviews nonetheless contain certain statements that are hearsay not within any exception. *See State v. L.E.F.*, 10th Dist. No. 13AP-1042, 2014-Ohio-4585, ¶ 11.

{¶ 21} Watts points to several specific statements from the interviews of both L.R. and M.R. that he argues are not for medical diagnosis and treatment. Watts first argues Combes' question to L.R. asking how she knew "that [Watts] put his finger up [M.R.] too," and L.R.'s response that Watts used a quarter to unlock the bathroom when L.R. and M.R. were both inside was for forensic or investigative purposes. (State's Ex. 1 at 11.) *See L.E.F.* at ¶ 13 (concluding victim's statements when she described "the houses and rooms in which the abuse occurred" were mainly for forensic purposes and thus inadmissible). Similarly, Watts argues Combes' follow-up question asking L.R. if she actually saw Watts "put his finger up [M.R.]" or if that was something that M.R. told her, and L.R.'s response that "[t]hat's what [she] saw" are similarly for forensic purposes and thus inadmissible. (State's Ex. 1 at 12-13.) However, Combes testified that one of the purposes of her interviews with the victims is to assess the need for mental health treatment. Additionally, Dr. Brink testified that evaluating the victims for the need for mental health treatment is an important function of the interview. These questions related to whether L.R. witnessed the sexual abuse of her sister and whether she may need mental health counseling as a result, and we conclude these questions and answers were for the purpose

of the medical diagnosis and treatment of L.R.'s mental health and, thus, admissible under *Arnold* and Evid.R. 803(4). *See, e.g., In re C.C.*, 10th Dist. No. 04AP-883, 2005-Ohio-5163, ¶ 33 (statements made for purposes of medical diagnosis and treatment extend to statements made for purposes of mental health counseling and treatment).

{¶ 22} Watts next argues that Combes' question to L.R. asking her to describe "how [Watts has] been mean to Mommy" and L.R.'s responses describing Watts kicking and hitting her mother served a forensic purpose and was thus inadmissible. (State's Ex. 1 at 15.) Again, however, we conclude that these questions are for the purpose of medical diagnosis or treatment because they relate to mental health treatment of L.R. witnessing the abuse involving her mother.

{¶ 23} Further, Watts challenges the admissibility of Combes' questions to L.R. related to whether anyone had exposed L.R. to pornography. Specifically, Combes asked L.R. if she knew who took the picture of the boy, and Combes asked L.R. if she knew who the boy was or whether he was a child or an adult. Watts argues these statements serve primarily a forensic purpose because neither the identity of the photographer nor the identity of the subject of the photograph are relevant to L.R.'s medical diagnosis or treatment. However, when read in context with the rest of the interview, it is clear these questions were meant to determine whether L.R. had been exposed to pornography, in what form, and to what extent. Combes testified that a child's exposure to pornography is "a form of sexual abuse," so these statements were relevant to L.R.'s medical diagnosis and treatment. (Tr. Vol. III at 286.)

{¶ 24} As to Combes' interview with M.R., Watts argues Combes' question to M.R. asking her where she was in the house when Watts touched her was for forensic purposes. However, when read in context, it is clear that Combes used this question to try to determine the extent of the abuse from Watts, not to pinpoint a particular room in the house where the abuse occurred. Thus, this statement was for the purpose of medical diagnosis and treatment and was therefore admissible.

{¶ 25} Watts also argues M.R.'s statement that Watts has been mean to her friends is not relevant to medical diagnosis or treatment. However, Watts does not identify any error that may have resulted from the admission of this statement, and we conclude that any error which may have resulted from the admission of this statement is harmless

beyond a reasonable doubt. *State v. Simms*, 10th Dist. No. 10AP-1063, 2012-Ohio-2321, ¶ 41.

{¶ 26} Finally under this assignment of error, Watts argues the trial court erred in admitting Combes' question to M.R. asking her "how [Watts] touch[ed] [her] front private on top of skin" because, as Watts argues, the specific details of how the abuse actually occurred are not relevant to medical treatment. (State's Ex. 4 at 18.) We disagree. "[I]nformation regarding the identity of the perpetrator, the type of abuse alleged, the identification of the areas where the child had been touched and the body parts of the perpetrator that had touched her, as well as the timeframe of the abuse" are all statements for purposes of medical diagnosis and treatment "because that information allow[s] the doctor or nurse to determine whether to test the child for sexually transmitted diseases, and to identify any trauma or injury sustained during the alleged abuse." *Simms* at ¶ 39, citing *Arnold* at ¶ 32, 38.

{¶ 27} Thus, we do not agree with Watts that the trial court permitted the jury to hear multiple improper hearsay statements. The statements Watts challenges are all admissible as statements made for purposes of medical diagnosis and treatment. The lone exception, the admission of M.R.'s statement that Watts was mean to her friends, was harmless beyond a reasonable doubt. Accordingly, we overrule Watts' first assignment of error.

### B. Unfairly Prejudicial Statements

{¶ 28} In his second assignment of error, Watts argues the trial court abused its discretion in admitting portions of L.R.'s recorded interview because it contained statements that were irrelevant and unfairly prejudicial.

{¶ 29} Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Watts argues that the trial court's admission of the portions of L.R.'s interview in which she described witnessing Watts physically abuse her mother was in error because Watts was not charged with any crime related to his treatment of the victims' mother. Watts argues these statements are not relevant and are highly prejudicial. Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially

outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 30} " 'If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403.  Emphasis must be placed on the word "unfair." ' " *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, ¶ 24, quoting *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172 (2001).  Thus, " '[u]nfair prejudice is that quality of evidence which might result in an improper basis for a jury decision.' " *Id.*, quoting *Oberlin* at 172.  Evidence may be unfairly prejudicial if it " 'arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish.' " *Id.*, quoting *Oberlin* at 172.  Often, though not always, evidence is unfairly prejudicial if it appeals to the jury's emotions rather than the jury's intellect.  *Id.*

{¶ 31} Fairness is subjective and thus the determination whether evidence is unfairly prejudicial is left to the sound discretion of the trial court.  *Crotts* at ¶ 25, citing *State v. Robb*, 88 Ohio St.3d 59, 68 (2000).

{¶ 32} We note that at trial, defense counsel objected to the entire recordings of the interviews but did not, even after prompting by the trial court, point to any specific portions it wanted the court to redact from the recordings.  The state contends Watts has therefore waived this issue for all but plain error.  Though Watts concedes he did not specifically object to any specific statements contained in the recorded interviews on the grounds that those statements were irrelevant or unfairly prejudicial, he argues his counsel's blanket objection to the introduction of the recorded interviews as hearsay should operate to preserve his more specific objection on the grounds of relevance and unfair prejudice for purposes of appeal.  However, "[a]n objection to evidence on one ground does not preserve an objection on another ground, absent plain error." *State v. Barnes*, 10th Dist. No. 04AP-1133, 2005-Ohio-3279, ¶ 28, citing *State v. Davis*, 1 Ohio St.2d 28, 33 (1964).  "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 58 (10th Dist.), citing *State v. Saleh,* 10th Dist. No. 07AP-431, 2009-Ohio-1542, ¶ 68.

{¶ 33} For an error to be a "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error

must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 34} Even assuming arguendo that it was error for the trial court to admit the statements related to L.R. witnessing Watts hit and kick her mother, we conclude Watts suffered no prejudice as a result of the statements admission. Though Watts argues the jury would have found these statements horrific and that the statements would have appealed to the jury's sense that Watts deserved to be punished, we disagree. As the state notes, the allegations against Watts were that he sexually abused two young children. In the face of such serious allegations, the victim's statements related to Watts hitting and kicking the victims' mother did not serve to horrify the jury. There was ample other evidence at trial directly relevant to Watts' conduct with the two young victims, and Watts does not and cannot argue that the jury would not have convicted him if not for these allegations that he also physically assaulted the victims' mother. Thus, Watts does not demonstrate the trial court's admission of these statements amounts to plain error, and we overrule Watts' second assignment of error.

## IV. Third Assignment of Error – Procedural Due Process

{¶ 35} In his third assignment of error, Watts argues the trial court denied him his right to due process when it did not redact portions of the video. More specifically, Watts asserts the trial court rendered the process against him fundamentally unfair when it allowed the jury to be exposed to portions of the video Watts characterizes as inadmissible evidence.

{¶ 36} Due process "expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is loft." *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 24 (1981). The basic requirement of due process is the accused's right to a fair trial before an impartial tribunal. *Columbus v. LaMarca*, 10th Dist. No. 15AP-440, 2015-Ohio-4467, ¶ 55, citing *State v. Batty*, 4th Dist. No. 13CA3398, 2014-Ohio-2826, ¶ 15; *Lyons v. Oklahoma*, 322 U.S. 596, 605 (1944), quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941) (stating "[t]he Fourteenth Amendment is a protection against criminal trials in state courts conducted in such a manner as amounts to a disregard of 'that fundamental fairness essential to the very concept of justice,' and in a

way that 'necessarily prevents a fair trial' ").   " 'The accused, therefore, has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error.' " *LaMarca* at ¶ 55, quoting *State v. Jones*, 8th Dist. No. 101514, 2015-Ohio-2151, ¶ 58.

{¶ 37} We do not agree with Watts that the proceedings against him lacked fundamental fairness.   Watts never requested specific redactions of the recorded interviews during the trial.   Though he filed a motion in limine seeking to exclude the recordings in their entirety, Watts never identified specific statements for the court to redact based on hearsay or some other grounds of inadmissibility.   Even after prompting by the trial court to indicate which portions of the recordings should be redacted, Watts still responded in generalities.   Additionally, as we explained in our resolution of Watts' first and second assignments of error, even if some of the statements contained in the recorded interviews were arguably inadmissible, the admission of those statements was harmless and could not reasonably be understood to have affected the outcome of Watts' case.   For these reasons, we overrule Watts' third assignment of error.

## V. Fourth Assignment of Error – Ineffective Assistance of Counsel

{¶ 38} In his fourth and final assignment of error, Watts argues he received ineffective assistance of counsel.   In order to prevail on a claim of ineffective assistance of counsel, Watts must satisfy a two-prong test.   First, he must demonstrate that his counsel's performance was deficient.   *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   This first prong requires Watts to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."   *Id.*   If Watts can so demonstrate, he must then establish that he was prejudiced by the deficient performance.   *Id.*   To show prejudice, Watts must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different.   A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial.   *Id.* at 694.

{¶ 39} In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.   *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Watts contends his trial counsel was ineffective in (1) failing to properly object to individual questions and answers contained in the recorded interviews with the victims,

and (2) improperly relying on an argument relating to Evid.R. 807 instead of focusing on a hearsay argument as a basis to exclude certain statements in the recorded interviews.

### A. Failure to Object to Individual Statements

{¶ 40} As we noted in our resolution of Watts' second assignment of error, Watts' trial counsel failed to object to the admission of any specific statement contained in the recorded interviews with the victims, and we thus reviewed Watts' second assignment of error under a plain error standard. In disposing of Watts' argument related to the admissibility of certain statements, we concluded Watts was unable to demonstrate the outcome of his trial would have been different had it not been for the admission of these statements. " '[W]here the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel.' " *State v. Roy*, 10th Dist. No. 14AP-223, 2014-Ohio-4587, ¶ 20, quoting *State v. Carson*, 10th Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 51.

### B. Improper Basis for Objection

{¶ 41} Finally, Watts argues his counsel was ineffective in relying on an argument based on Evid.R. 807 to exclude the recorded videos rather than an argument based on the hearsay exceptions contained in Evid.R. 803. Although Watts' trial counsel did advance an argument at trial that the statements were not admissible because they did not satisfy the requirements of Evid.R. 807, the state responded that the recordings were properly admissible as exceptions to the hearsay rule under Evid.R. 803. Thus, even if Watts' trial counsel had raised a different argument, the trial court nonetheless considered the merits of the hearsay argument and determined the videos were admissible as statements intended for purposes of medical diagnosis and treatment under Evid.R. 803(4).

{¶ 42} Moreover, Watts suffered no prejudice as a result of his counsel's reliance on a different rule of evidence because, as we explained above, the only statements that were even arguably erroneously admitted were those related to Watts' conduct toward the victims' mother and the statement that Watts was mean to M.R.'s friends. There is no reasonable probability that the outcome of the trial would have been different had the trial court not admitted those statements. *See State v. Valentine*, 10th Dist. No. 14AP-893, 2016-Ohio-277, ¶ 24 (trial counsel's failure to object to testimony does not amount to

ineffective assistance of counsel where the defendant "failed to demonstrate a reasonable probability that, but for his counsel's deficient representation, the result of the proceedings would have been different, as there is overwhelming evidence of [the defendant's] guilt in this case"). Thus, Watts' trial counsel's failure to articulate the proper grounds for his objection to these statements does not substantiate a claim of ineffective assistance of counsel.

{¶ 43} Because Watts is not able to demonstrate the requisite prejudice under the second prong of *Strickland* for any of his alleged instances of ineffective assistance of counsel, we overrule Watts' fourth and final assignment of error.

## VI. Disposition

{¶ 44} Based on the foregoing reasons, the trial court did not abuse its discretion or commit plain error in making its evidentiary rulings, the trial court did not deprive Watts of his right to due process, and Watts did not receive ineffective assistance of counsel. Having overruled Watts' four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and BRUNNER, JJ., concur.