[Cite as *State v. Meacham*, 2025-Ohio-5645.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                                    :

      Plaintiff-Appellee,                      :            No. 24AP-330
                                                                            (C.P.C. No. 22CR-3775)
v.                                                                   :

                                                                              (REGULAR CALENDAR)
Christopher H. Meacham,                              :

      Defendant-Appellant.                   :

---

D E C I S I O N

Rendered on December 18, 2025

---

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Mark R. Wilson*, for appellee.

**On brief:** *Brehm Legal Group*, *Eric W. Brehm*, and *Heather J. Landis*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

JAMISON, P.J.

{¶ 1} Defendant-appellant, Christopher H. Meacham, appeals from convictions by jury trial in the Franklin County Court of Common Pleas. For the following reasons, we affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 17, 2022, a Franklin County Grand Jury indicted appellant on the following charges: rape, a violation of R.C. 2907.02, a felony of the first degree; two counts of sexual battery, violations of R.C. 2907.03, felonies of the third degree; and three counts of gross sexual imposition, violations of R.C. 2907.05, felonies of the fourth degree. These alleged offenses occurred between September 8, 2019 and November 21, 2021.

{¶ 3} Appellant entered not guilty pleas to all charges.

{¶ 4} A jury trial commenced on April 1, 2024.

{¶ 5} Prior to the start of testimony, the plaintiff-appellee, State of Ohio, motioned the court to allow the alleged victim, R.M., to testify with a therapy dog in the witness box. Appellant opposed the state's motion, arguing that R.M. was 16 years old and was previously interviewed without the presence of a therapy dog. The trial court granted the state's motion over appellant's objection.

{¶ 6} The state's first witness was R.M. Prior to the jury entering the courtroom, R.M. and the therapy dog were placed in the witness box.

{¶ 7} R.M. testified that her date of birth was September 8, 2007. Appellant is R.M.'s biological father. In September of 2018, R.M.'s mother passed away. At the time, R.M. was living with her grandparents, appellant, and her two younger siblings. They lived in a house on Jackson Road. R.M. lived at that location from 2017 until 2021. R.M. slept in the basement with appellant and her siblings. R.M. slept on a mattress with appellant.

{¶ 8} R.M. testified that beginning in 2018, when she was living with appellant at the Jackson Road residence, appellant touched her "butt, . . . vagina and . . . boobs." (Apr. 3, 2024 Tr. Vol. II at 87.) R.M. explained that appellant "[s]ometimes . . . insert[ed] his fingers into [her] vagina . . . squeeze[d] [her] boobs and his penis . . . press[ed] against [her] body." *Id*. This conduct occurred when she was in bed with appellant. The abuse would begin with appellant pulling down both of their pants. Then appellant started touching her. She pretended like she was asleep because she was scared.

{¶ 9} Eventually, R.M. moved to a bedroom upstairs. The conduct that occurred in the basement continued upstairs. R.M. added that eventually she started wearing a bra to bed and appellant would remove that. Appellant would also "use his mouth . . . on [her] vagina." (Tr. Vol. II at 96.) R.M. explained that appellant's tongue would contact her vagina. R.M. testified that appellant would remove various items of their clothing, including his pants and underwear. Appellant then "caress[ed]" her butt and vagina with his penis. *Id*. at 97. Appellant would partially put his penis into her vagina and butt. When he did this, his body would move "up and down or back and forth." *Id*. at 99. On one occasion, appellant said "[i]t feels so good" when he touched her. *Id*. at 110. Other times, he would make grunting sounds. R.M. testified that this conduct occurred every night.

{¶ 10} R.M. testified that on one occasion "[s]omething came out of his penis" and it got on one of her blankets. *Id.* at 98. Appellant got wet wipes to clean it up and then put the blanket in the washing machine.

{¶ 11} R.M. identified appellant as the individual who engaged in the aforementioned conduct.

{¶ 12} In the summer of 2021, R.M. moved in with her second cousin, M.O. R.M. still occasionally saw appellant on the weekends. Sometimes he came to pick her up and they would go out to see things. R.M. testified that appellant touched her body, usually her thigh over her clothes, on these occasional visits.

{¶ 13} On one occasion, R.M. stayed overnight with appellant and her two younger siblings at the Quality Inn on Stringtown Road. This occurred around Thanksgiving. That night, appellant started out sleeping in the bed with her siblings, then he moved over into R.M.'s bed. R.M. testified that appellant pulled down her pants, inserted his fingers into her vagina, and touched her breasts.

{¶ 14} After approximately eight or nine months of living with M.O., R.M. told her about what appellant was doing.

{¶ 15} It should be noted that during all times of R.M.'s testimony, whenever there was a break and at the conclusion, the jury was excused prior to R.M. and the therapy dog leaving the witness box.

{¶ 16} Dr. Nara Cho, a fellow with the child assessment team at Nationwide Children's Hospital ("Nationwide"), was the state's next witness. Dr. Cho testified that she performed approximately 400 examinations of children who were alleged to have been sexually abused. She opined that in more than 90 percent of examinations there are no injuries. (Tr. Vol. II at 189.) Dr. Cho testified that she performed a sexual assault examination on R.M. in February of 2022.

{¶ 17} During Dr. Cho's testimony, the state attempted to introduce a child assessment center medical consultation note written by Dr. Cho. Appellant objected, alleging that the document contained opinions that should be redacted. That included the opinion that 90 percent of children's sexual assault examinations are normal. The trial court overruled appellant's objection stating that the statement was pertinent to Dr. Cho's medical diagnosis and treatment. To the extent the document contained hearsay, the court

ruled that those hearsay statements were admissible under Evid.R. 803(4). Dr. Cho went on to testify that R.M.'s anogenital exam was normal. In her opinion, Dr. Cho's physical findings were consistent with the history provided by R.M.

{¶ 18} M.O. was the state's next witness. M.O. testified that she is appellant's first cousin and R.M.'s second cousin. R.M. referred to her as Aunt Miss. M.O. testified that R.M. came to live with her at the end of the school year in 2021. While R.M. stayed at M.O.'s house, R.M. still saw appellant on a consistent basis during the summer of 2021. Those visits rarely occurred at her home. Rather, appellant and R.M. would go out somewhere.

{¶ 19} From August of 2021 until early 2022, R.M.'s visits with appellant became far less consistent. Beginning in October 2021, M.O. and her husband began to notice that R.M. was very sad and depressed. She withdrew from activities and relationships. There were changes in her sleep patterns and academic performance. R.M. also did not want to spend as much time with appellant. M.O. confirmed that around Thanksgiving in 2021, R.M. visited with appellant and they stayed at a hotel on Stringtown Road in Grove City.

{¶ 20} In January of 2022, M.O. and R.M. got into an argument about there being no food for her to eat in the house. During the argument, M.O. said she was going to call appellant to come pick her up in the morning and take her to buy snacks. In response, R.M. just stared at her, almost in fear. M.O. then went to her room. A little while later, R.M came to talk to her. R.M. began crying and shaking. Eventually, R.M. told her that appellant touches her. She spoke with R.M. for hours about how appellant touched her. R.M. described being sexually assaulted by appellant.

{¶ 21} Over the next several days, M.O. called children's services and the police to make a report. R.M. spoke to both children's services and the police about what happened. At some point, appellant texted M.O. asking her to call him and not to let R.M. speak with law enforcement. However, M.O. arranged for a forensic interview of R.M. at Nationwide. That interview was cancelled because she did not have legal custody of R.M. and appellant refused to consent to the interview. Appellant told M.O. that he would hand over custody of R.M. to make the situation go away.

{¶ 22} In order to arrange for a forensic interview, M.O. filed for temporary custody of R.M. As soon as she received temporary custody of R.M., M.O. took her to Nationwide and R.M. was forensically interviewed.

{¶ 23} Detective Michael Gross of the Franklin County Sheriff's Office was the state's next witness. Gross was assigned the lead detective role in this matter. He testified that the residence on Jackson Road was in Franklin Township in Franklin County, Ohio. Gross also testified that the hotel in Grove City was located at 1800 Stringtown Road, Franklin County, Ohio. He obtained a receipt from that hotel indicating that appellant rented a room there on November 20, 2021.

{¶ 24} The state's final witness was Kerri Wilkinson, a former forensic interviewer at the child assessment center at Nationwide. Wilkinson conducted the forensic interview of R.M. on February 8, 2022. The state began to question Wilkinson about the report she generated from that forensic interview. Appellant objected to the portion of the report that summarized R.M.'s disclosures during the interview. The trial court overruled the objection. In general, Wilkinson testified about the forensic interview process and the types of sexual abuse R.M. disclosed.

{¶ 25} Appellant testified in his own defense. He denied all of the allegations made against him.

{¶ 26} Following the presentation of evidence, appellant made a Crim.R. 29 motion for acquittal. The trial court denied that motion.

{¶ 27} Ultimately, the jury found appellant guilty of all charges contained in the indictment. The trial court sentenced appellant to 16- and one-half years to life in prison.

{¶ 28} Appellant now brings this appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 29} Appellant assigns the following as trial court errors:

> 1. The Trial Court Erred by Allowing a Therapy Dog Without Evidence of Individualized Need Under Ohio Law.
>
> 2. The Trial Court Erred by Admitting the Expert's "90%" Statement Under Ohio Rule of Evidence 803(4), as It Was Not a Statement Made for Medical Diagnosis or Treatment, and This Error Prejudiced the Defendant's Right to a Fair Trial.
>
> 3. The Trial Court Erred in Admitting Forensic Interview Summary Which Was Inadmissible Hearsay Under Ohio Rule of Evidence 803(4).
>
> 4. The Trial Court Erred in Denying Defendant's Criminal Rule 29 Motion for Acquittal.

(Sic passim.)

## III.  STANDARD OF REVIEW

{¶ 30} Under Evid.R. 611, trial courts have broad discretion in controlling the mode and order of interrogating witnesses and presenting evidence. *State v. Presley*, 2003-Ohio-6069, ¶ 44 (10th Dist.). "Thus, a procedure implemented by a trial court to elicit testimony from a witness will not be disturbed on appeal absent a showing that the court abused its discretion." *Id.*, citing *State v. Johnson*, 38 Ohio App.3d 152, 154 (5th Dist. 1986). An abuse of discretion exists when the trial court has an unreasonable, arbitrary, or unconscionable attitude in reaching its decision. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 31} The admission of evidence also "lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 2006-Ohio-2815, ¶ 62.

{¶ 32} A sufficiency of the evidence challenge examines "[w]hether the evidence is legally adequate to support a verdict." *State v. Kurtz*, 2018-Ohio-3942, ¶ 15 (10th Dist.). The test for sufficiency is whether the prosecution has met its burden of production at trial, and is a question of law, not fact. *State v. Boles*, 2013-Ohio-5202, ¶ 34 (12th Dist.). An appellate court's standard of review for sufficiency of the evidence " 'is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Smith*, 1997-Ohio-355, ¶ 98, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The testimony of one witness, if believed by the trier of fact, is enough to support a conviction. *State v. Strong*, 2011-Ohio-1024, ¶ 42 (10th Dist.).

## IV.  LEGAL ANALYSIS

{¶ 33} In his first assignment of error, appellant alleges that the trial court erred in allowing R.M. to testify with the assistance of a therapy dog. More specifically, appellant argues that the trial court abused its discretion because there was no evidence of an individualized need for R.M. to testify with the presence of the therapy dog. In support of this argument, appellant points to R.M. being 16 years of age at the time of her testimony and the lack of evidence of her utilizing a therapy dog when previously discussing the allegations.

{¶ 34} "When applying Evid.R. 611(A) in the context of a criminal prosecution for alleged sexual abuse of a minor child, courts should 'recognize that the protection of child victims of sexual abuse forms an important public policy goal in this state and across the nation.' " *State v. Hasenyager*, 2016-Ohio-3540, ¶ 9 (9th Dist.), quoting *State v. Eastham*, 39 Ohio St.3d 307, 310 (1988). "Due to this recognition, '[s]pecial accommodations . . . are often allowed for child victims of sexual abuse to minimize the emotional trauma and stress of having to testify in a courtroom full of strangers, along with the accused.' " *State v. Jacobs*, 2015-Ohio-4353, ¶ 21 (9th Dist.), quoting *State v. Gutierrez*, 2011-Ohio-3126, ¶ 100 (3d Dist.).

{¶ 35} In *Hasenyager* at ¶ 11, the Ninth District Court of Appeals found that the defendant failed to establish that the trial court abused its discretion in allowing the 13-year-old victim to testify with the assistance of a facility dog. In so holding, the Ninth District noted that the state asserted that the dog's presence would decrease the stress, harassment, and embarrassment to the victim. *Id.* Furthermore, the state argued that the facility dog would comfort the victim as she testified in front of a large group of strangers. *Id.* The trial court found that the presence of the dog would provide some calmness and security during her testimony and make the process more palatable. *Id.* Based on the record before it, the Ninth District concluded that the trial court's decision was not an abuse of discretion. *See also Jacobs* at ¶ 25 (trial court did not abuse its discretion in allowing 17-year-old to testify with a companion dog).

{¶ 36} In this matter, the facts in support of the trial court's decision are arguably stronger than those in *Hasenyager*. In addition to the state arguing that a therapy dog would make the witness feel more comfortable, the record reflects that this was a highly emotional matter for all involved. This is demonstrated by the trial court's pre-trial order and ongoing admonitions regarding any displays of emotion by individuals in the gallery of the courtroom. Furthermore, even with the presence of the therapy dog, R.M. still had to take a break to compose herself during her testimony. It should also be noted that the accused in this case was R.M.'s biological father, which undoubtedly carries with it significantly enhanced emotional effects. This is especially so given that the record reflects R.M. had not seen her father since the winter of 2021.

{¶ 37} Appellant's argument that the trial court erred because R.M. was 16 at the time of her testimony is not well-taken. This court declines to establish an arbitrary age limit for when alleged child sexual abuse victims are no longer allowed to testify with the assistance of a therapy animal. This is especially so when there are facts in the record, such as those mentioned above, that demonstrate the child will be testifying in a tension-filled, emotionally charged environment.

{¶ 38} As for appellant's argument that the trial court abused its discretion because R.M. never needed a therapy dog prior to trial, that contention is not supported by the record. Nowhere in the evidence or testimony was it established that R.M. never used a therapy dog. Indeed, it is entirely possible that R.M. used the assistance of a therapy dog during trial preparation, therapy sessions, etc. However, there is no evidence in the record as to whether R.M. ever needed the assistance of a therapy dog. As such, appellant's argument is without merit.

{¶ 39} In sum, a thorough review of the record reveals that the trial court did not act unreasonably, arbitrarily, or unconscionably in permitting R.M. to testify with the assistance of a therapy dog. In fact, the record reveals the opposite. The trial court carefully considered both sides' arguments, considered a limiting instruction, and even put in place procedures to minimize the jury's view of the dog. A review of the record suggests that the jury was unaware of the dog's presence. The dog never caused a disruption in the trial. Furthermore, the jury was outside of the courtroom every time the dog was moved in and out of the witness box. *See State v. Lacey*, 2018-Ohio-4145, ¶ 27 (2d Dist.) (rejecting defendant's argument where the only reference to the dog was during voir dire, indicating it had no noticeable impact on the trial).

{¶ 40} Based on the foregoing, appellant has failed to establish that the trial court abused its discretion in permitting R.M. to testify with a therapy dog. Appellant's first assignment of error is overruled.

{¶ 41} In his second assignment of error, appellant argues that the trial court erred in admitting Dr. Cho's statement that 90 percent of children's sexual assault examinations are normal. More specifically, appellant argues that the trial court erroneously admitted Dr. Cho's statement under Evid.R. 803(4) as a statement made for the purpose of medical

treatment or diagnosis. Appellant further contends that this improperly bolstered the state's allegations despite the lack of physical evidence.

{¶ 42} Initially, it should be noted that appellant only objected to this statement regarding its inclusion in Dr. Cho's written records of her examination of R.M. Dr. Cho testified to this exact same statement without objection shortly before the state attempted to introduce her written records. This court fails to see how a statement is admissible through oral testimony, but inadmissible when it is included in written documents.

{¶ 43} Furthermore, appellant's argument that the trial court admitted this statement under Evid.R. 803(4) is belied by the record. The trial court stated that "I think that statement is pertinent to Dr. Cho's medical diagnosis and treatment, and the fact that there was no injury did not rule out sexual assault. That is pertinent to her related follow-up recommendation." (Tr. Vol. II at 195.) It is clear from this statement that the trial court admitted Dr. Cho's assertion as relevant to explain R.M.'s lack of injuries, not as a statement for the purpose of medical treatment and diagnosis. The trial court went on to say, "*to the extent* that there is any hearsay in this record, which I've not openly viewed, I find that there's a foundation laid under Rule 803(4)." (Emphasis added.) *Id*. However, this appears to be the trial court covering its bases in the case that there happened to be hearsay within the documents offered by the state.

{¶ 44} Appellant argues that the trial court should have analyzed his objection under Evid.R. 702. However, appellant fails to assert that such an analysis would have rendered Dr. Cho's statement inadmissible. Without objection, Dr. Cho was certified as an expert in the area of sexual abuse examination. She testified that she has conducted approximately 400 sexual abuse examinations of children. She provided medical reasons for why a child's sexual assault examination would be normal. In fact, this type of testimony is quite common in child sexual abuse cases. *See State v. Spires*, 2011-Ohio-3312, ¶ 25 (10th Dist.) (pediatric sexual assault examination expert testified that physical signs of abuse are found in only 3 to 4 percent of cases).

{¶ 45} As previously stated, a trial court's decision to admit evidence will not be disturbed on appeal absent an abuse of discretion that created material prejudice. *Conway*, 2006-Ohio-2815, at ¶ 62. Assuming arguendo that the court abused its discretion in admitting Dr. Cho's statement, appellant has failed to establish that he was materially

prejudiced by the admission. During cross-examination, trial counsel effectively demonstrated that R.M.'s normal sexual examination did not prove or disprove the existence of sexual abuse. As such, Dr. Cho's statement regarding the percentage of normal examinations was rendered neutral.

{¶ 46} Based on the foregoing, appellant failed to establish that the trial court abused its discretion in admitting Dr. Cho's statement regarding the percentage of normal child sexual assault examinations. Moreover, the record reveals that appellant was not materially prejudiced by the admission of this evidence. Appellant's second assignment of error is overruled.

{¶ 47} In his third assignment of error, appellant argues that the trial court erred in admitting a summary of R.M.'s forensic interview under Evid.R. 803(4). More specifically, appellant contends that the summary did not meet the requirements of a statement for purposes of medical treatment and diagnosis. In the alternative, appellant asserts that the summary was unnecessarily duplicative of already admitted evidence and thus, unfairly prejudicial under Evid.R. 403.

{¶ 48} Under Evid.R. 803(4), "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded as hearsay. In *State v. Arnold*, 2010-Ohio-2742, the Supreme Court of Ohio considered the admissibility of statements made during interviews at child advocacy centers. Recognizing the dual purposes of these interviews, the court reasoned that some statements had a primarily forensic or investigative purpose, while others had a primarily medical diagnosis or treatment purpose. *Id.* at ¶ 33. *Arnold* and its progeny have consistently held that a child's statements during a forensic interview containing details about the identity of the perpetrator and the types of abuse endured by the victim are admissible pursuant to Evid.R. 803(4). *See State v. Watts*, 2016-Ohio-5386, ¶ 26 (10th Dist.).

{¶ 49} A thorough review of the forensic interview summary reveals that the vast majority of the statements contained therein were descriptions of the types of sexual abuse appellant allegedly perpetrated upon R.M. (State's Ex. G.) Furthermore, both Dr. Cho and Wilkinson testified that these statements were used for medical treatment and diagnosis.

Thus, pursuant to *Arnold*, the forensic interview summary was admissible under Evid.R. 803(4). Although there were some contextual statements contained in the summary, such as where the abuse allegedly occurred, the admission of such statements was harmless error. Pursuant to Crim.R. 52(A), harmless error is defined as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights." Ohio courts have routinely held that the admissions of these contextual statements are harmless errors where the victim(s) testifies. *Watts* at ¶ 8, 25; *State v. Moore*, 2019-Ohio-1671, ¶ 30 (2d Dist.); *State v. Warman*, 2017-Ohio-244, ¶ 52 (12th Dist.). Thus, because the contextual statements contained in the summary were minimal and R.M. testified, any erroneous admission of those statements was harmless error.

{¶ 50} Appellant also contends that the admission of the summary was inadmissible under Evid.R. 403 because its probative value was outweighed by the danger of unfair prejudice. Appellant asserts that because R.M. testified, the admission of these statements within an "official[]" medical report unfairly bolstered R.M.'s testimony. (Appellant's Brief at 27.) However, appellant's argument ignores the fact that there were inconsistencies between R.M.'s statements during the interview and her testimony, something that appellant brought up in his cross-examination of R.M. For example, in her forensic interview, she indicated that appellant frequently made her touch his penis, whereas she testified that it only happened during the incident at the hotel. Thus, the admission of the summary was arguably beneficial to appellant's case. It follows that the probative value of this summary was not outweighed by the risk of unfair prejudice.

{¶ 51} Based on the foregoing, appellant's third assignment of error is overruled.

{¶ 52} In his fourth assignment of error, appellant alleges that the trial court erred in denying his Crim.R. 29 motion for acquittal. More specifically, appellant alleges that "the trial court erred in denying Defendant's Rule 29 motion, as the prejudicial evidentiary errors — permitting a therapy dog without individualized need, admitting Dr. Cho's '90%' statement under an improper hearsay exception, and allowing the forensic interview summary as hearsay — undermined the sufficiency of the evidence." (Appellant's Brief at 30-31.) However, appellant's fourth assignment of error is more akin to a cumulative error argument. Appellant merely reargues his first three assignments of error and fails to address any actual deficiencies in the evidence. We have already addressed and overruled

his other assignments of error.  Thus, the arguments contained in his fourth assignment of error are without merit.

{¶ 53} Nevertheless, we will still engage in a sufficiency of the evidence analysis. Appellant was convicted of one count of rape pursuant to R.C. 2907.02(A)(1)(b).  That section states that "[n]o person shall engage in sexual conduct with another when . . . [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."  R.C. 2907.02(A)(1)(b).  "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another.  Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶ 54} R.M. testified that her date of birth was September 8, 2007.  Beginning in 2018, at the Jackson Road residence, when R.M was 10 to 11 years old, appellant began touching various parts of her body.  R.M. testified that appellant inserted his fingers into her vagina, contacted her vagina with his tongue, and partially inserted his penis in her vagina and butt.  This conduct occurred every night.  R.M.'s testimony established that appellant engaged in sexual conduct on numerous occasions prior to her turning 13 years of age.  As previously stated, the testimony of one witness, if believed by the trier of fact, is enough to support a conviction. *Strong*, 2011-Ohio-1024, at ¶ 42 (10th Dist.).  Thus, R.M.'s testimony was sufficient to support appellant's conviction for rape.

{¶ 55} Appellant was also convicted of two counts of sexual battery in violation of R.C. 2907.03(A)(5).  That section states that "[n]o person shall engage in sexual activity with another . . . when . . . [t]he offender is the other person's . . . natural . . . parent." R.C. 2907.03(A)(5).  "Sexual activity" is defined as "sexual conduct or sexual contact, or both." R.C. 2907.01(C).  "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).  Proof of sexual arousal or gratification is typically accomplished by inference rather than direct evidence. *State v. West*, 2006-Ohio-6259, ¶ 17 (10th Dist.). "The trier of fact may infer a purpose of sexual arousal or gratification from the 'type, nature

and circumstances of the contact, along with the personality of the defendant.' " *Id.*, quoting *State v. Cobb*, 81 Ohio App.3d 179, 185 (9th Dist. 1991).

{¶ 56} It is undisputed that appellant is R.M.'s biological father. Additionally, R.M.'s testimony that was discussed regarding appellant's rape conviction was also sufficient to establish an additional two counts of sexual battery. R.M. testified that the sexual abuse continued up until the November 2021 incident at the hotel in Grove City when she was 14. During that incident, R.M. testified appellant inserted his fingers into her vagina, constituting sexual conduct, and touched her breasts, constituting sexual contact. Thus, her testimony regarding this incident alone was sufficient to support appellant's convictions on both counts of sexual battery. Furthermore, R.M. testified that every night, at the Jackson Road residence, appellant would insert his fingers in her vagina, squeeze her boobs, press his penis up against her body, use his tongue on her vagina, and partially insert his penis into her vagina and butt. This testimony was sufficient to establish the sexual activity element necessary for appellant's sexual battery convictions.

{¶ 57} As for the element of sexual arousal or gratification, although the jury could reasonably infer that element from the circumstances surrounding the abuse, there was also direct evidence on this issue. R.M. testified that on one occasion, a substance came out of appellant's penis and got on her blanket. On another occasion, while appellant was abusing her, he said that it felt so good. This testimony, along with the totality of the circumstances of the abuse, were sufficient to establish the element of sexual contact relating to sexual arousal or gratification. Thus, the evidence was sufficient to support appellant's convictions for two counts of sexual battery in addition to his conviction for rape.

{¶ 58} Finally, appellant was convicted of three counts of gross sexual imposition in violation of R.C. 2907.05(A)(1). That section states that "[n]o person shall have sexual contact . . . ; [or] cause another to have sexual contact with the offender; . . . when . . . [t]he offender purposely compels the other person . . . to submit by force or threat of force." R.C. 2907.05(A)(1). "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

{¶ 59} R.M.'s aforementioned testimony regarding the types of sexual abuse appellant perpetrated against her establishes the sexual contact element of at least three

instances of gross sexual imposition. Thus, the only additional element we must consider regarding these convictions is whether they were accomplished by force. Ohio courts have recognized that overt physical force need not be proven in cases of sexual abuse of a child by that child's parent. *State v. Riggs*, 2005-Ohio-5244, ¶ 19 (10th Dist.). Thus, because appellant was R.M.'s biological parent, the state was not required to offer evidence of physical force or compulsion. Nevertheless, R.M. also provided testimony that was sufficient to prove force. For example, R.M. testified that appellant removed her clothing; at times during the abuse, appellant's full body weight would be on top of her; and appellant frequently physically disciplined her. Thus, appellant's convictions for gross sexual imposition were supported by sufficient evidence.

{¶ 60} Based on the foregoing, each of appellant's convictions were supported by sufficient evidence. Thus, we overrule his fourth assignment of error.

## V. CONCLUSION

{¶ 61} Having overruled each of appellant's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS and DINGUS, JJ., concur.

_____